IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTORIE J. KLEIN,

       Plaintiff,

v.                                       1:20-cv-01199-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on plaintiff Victorie J. Klein's Motion to

Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 25), which was fully

briefed on October 15, 2021.  *See* Docs. 27, 30, 31.  This case was assigned to me on April 29,

2022, and the parties consented to my entering final judgment in this case.  Docs. 32, 33, 35, 36.

Having meticulously reviewed the entire record and being fully advised in the premises, I find

that the Administrative Law Judge ("ALJ") erred by failing to explain how she considered state

agency psychological consultant Dr. Walker's findings.  I therefore GRANT Ms. Klein's motion

and remand this case to the Commissioner for further proceedings consistent with this opinion.

I.       **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant

cannot show that his or her impairment meets or equals a Listing but proves that he or she is

unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience.  *Id.*

### III.    Background and Procedural History

Ms. Klein was born in 1975, completed one year of college, and her only work

experience is comprised of five or six months of work at a retail store.  AR 39–40, 172, 187,

195.[4]  She filed an application for Supplemental Security Income ("SSI") on October 18, 2018,

alleging disability since August 24, 2018, due to chronic pain, scoliosis, depression, anxiety, and

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 18-1 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

post-traumatic stress disorder ("PTSD").  AR 172–78, 186.  The Social Security Administration

("SSA") denied her claim initially on February 8, 2019.  AR 99–102.  The SSA denied her claim

on reconsideration on May 20, 2019.  AR 106–09.  Ms. Klein requested a hearing before an ALJ.

AR 112.  On April 2, 2020, ALJ Michelle Lindsay held a telephonic hearing.  AR 30–70.  ALJ

Lindsay issued an unfavorable decision on June 2, 2020.  AR 12–29.

At step one, the ALJ found that Ms. Klein had not engaged in substantial, gainful activity

since October 18, 2018, her application date.  AR 17.  At step two, the ALJ found that Ms. Klein

suffered from the following severe impairments:  degenerative disc disease of the cervical and

lumbar spine, minimal thoracic scoliosis, mild lumbar levoscoliosis, left elbow bursitis,

osteoarthritis of the knees, migraines, major depressive disorder, generalized anxiety disorder,

panic disorder, and PTSD.  AR 17–18.  At step three, the ALJ found that none of Ms. Klein's

impairments, alone or in combination, met or medically equaled a Listing.  AR 19–21.  Because

the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Klein's RFC.

AR 21–24.  The ALJ found Ms. Klein had the RFC to

> perform a range of light work as defined in 20 CFR 416.967(b), including the
> ability to lift, carry, push, and pull twenty pounds occasionally and ten pounds
> frequently, sit for at least six hours in an eight-hour workday, and stand and walk
> for six hours in an eight-hour workday.  She can occasionally kneel and crawl.
> She can never climb ladders, ropes, or scaffolds.  She must completely avoid
> unprotected heights.  She cannot work under very bright lighting, but regular
> office lighting is acceptable.  She is able to understand and remember detailed
> instructions; however, she is able to maintain attention and concentration to
> perform and persist at only simple tasks for two hours at a time without requiring
> redirection to task.  She can have occasional interaction with the general public.
> She is able to interact with co-workers and supervisors on a superficial basis and
> incidental basis, but cannot perform tandem tasks or work as part of a close-knit
> team.  She requires work involving no more than occasional change in the routine
> work setting.

AR 21.

At step four, the ALJ concluded that Ms. Klein did not have any past relevant work.  AR 24.  The ALJ found Ms. Klein not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as collator operator, routing clerk, and marker.  AR 24.

On July 5, 2020, Ms. Klein requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 164–66.  On September 18, 2020, the Appeals Council denied the request for review.  AR 1–6.  Ms. Klein timely filed her appeal to this Court on November 17, 2020.[5] Doc. 1.

## IV.    Ms. Klein's Claims

Ms. Klein raises seven arguments for reversing and remanding this case:  (1) the ALJ erred in analyzing the opinion of Dr. Roland Sanchez; (2) the ALJ erred in analyzing the opinion of consultative examiner Dr. Louis Wynne; (3) the ALJ erred in analyzing the findings of state agency psychological consultant Dr. Scott Walker; (4) the ALJ improperly assessed the effects of her migraines; (5) the ALJ failed to consider the lay evidence from Jason Miller, her fiancé; (6) the ALJ erred in assessing her subjective complaints; (7) the ALJ erred at step 5 by relying on vocational expert ("VE") testimony without first resolving discrepancies between the VE's testimony and "reliable job information."  *See* Doc. 25 at 10–24.  For the reasons discussed below, I find that the ALJ committed legal error by failing to adequately explain how she considered Dr. Walker's findings, and I remand on this basis.  I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal.  The 60 days begin running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

**V.      The ALJ erred by failing to explain how she considered Dr. Walker's findings.**

Ms. Klein argues that the ALJ committed legal error in analyzing the "opinions"[6] of state agency psychological consultant Dr. Scott Walker.  Doc. 25 at 16–18.  She argues that the ALJ failed to "discuss any of the requisite persuasiveness determining factors," and failed to explain "which parts of the opinion she adopted, and which she rejected."  *Id*. at 16.  Finally, she argues that the ALJ adopted some of the moderate mental limitations in Dr. Walker's "opinion," but rejected others without explanation.  *Id*. at 17–18.  In response, the Commissioner argues that the ALJ's RFC is more limited than Dr. Walker's findings.  Doc. 27 at 19.  The Commissioner asserts that because the ALJ "temper[ed] Dr. Walker's prior administrative finding[s] to Plaintiff's benefit," the ALJ did not commit any legal error.  *Id*.  The Court agrees with Ms. Klein.

Ms. Klein filed her application for SSI on October 18, 2018.  AR 172–78.  Therefore, the significantly revised regulations pertaining to medical opinions and prior administrative medical findings apply to this case.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence or prior administrative medical findings and is subject to the same standard of review.  *See* 20 C.F.R. § 416.920c ("How we consider and articulate medical opinions and prior

---

[6] Ms. Klein refers to Dr. Walker's findings (AR 94–96) as "opinions."  Doc. 25 at 16–18.  The Commissioner points out that under the regulations for claims filed on or after March 27, 2017, "statements by State agency medical or psychological consultants are not classified as 'opinions,' but are instead 'prior administrative medical findings."  Doc. 27 at 14.  The Commissioner characterizes this as a "nominal distinction."  *Id*.  Despite the distinction, the Court notes that the ALJ referred to the statements by both the State agency medical and psychological consultants as "opinions."  AR 23.  In any case, the Court does not find that the distinction between opinions and prior administrative medical findings (*see* 20 C.F.R. § 416.913(a)) affects the outcome in this case.

administrative medical findings for claims filed on or after March 27, 2017.")  Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

The new regulation sets forth five factors the SSA will consider in evaluating medical opinions and prior administrative findings:

(1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant.  This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

(i) Length of the treatment relationship.  The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations.  The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship.  The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship.  A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 416.920c(c).

The new SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence and/or prior administrative medical findings.  *See* 20 C.F.R. § 416.920c(b).  First, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s)," the ALJ need not articulate how he or she considered each individual medical opinion or prior administrative finding; rather, the ALJ "will articulate how [he or she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."  20 C.F.R. § 416.920c(b)(1).  Second, while an ALJ must consider five factors when evaluating medical opinion evidence and prior administrative medical findings, *see* 20 C.F.R. § 416.920c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors:  "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision," 20 C.F.R. § 416.920c(b)(2).  Finally, if differing medical opinions or prior administrative medical findings are equally well-supported and consistent with the record, the ALJ must then "articulate how [he

or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings." 20 C.F.R. § 416.920c(b)(3).

The new regulations do not alter the standard of review; ultimately, the relevant question is whether the SSA's decision complies with the regulations and is supported by substantial evidence. *See Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished) ("The ALJ complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence."). In addition, the nature of substantial-evidence review has not changed in light of the new regulations. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Finally, the decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (internal quotation marks omitted).

Dr. Scott Walker completed a Mental Residual Functional Capacity Assessment ("MRFCA") for Ms. Klein during the reconsideration level of the disability determination process. AR 94–96. In what is commonly referred to as Section I of the MRFCA,[7] Dr. Walker

---

[7] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

found that Ms. Klein had several moderate mental limitations:

> <u>Sustained Concentration and Persistence Limitations</u>:

- A moderate limitation in the ability to carry out detailed instructions.
- A moderate limitation in the ability to maintain attention and concentration for extended periods.
- A moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

> <u>Social Interaction Limitations</u>:

- A moderate limitation in the ability to interact appropriately with the general public.
- A moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.

> <u>Adaptation Limitations</u>:

- A moderate limitation in the ability to respond appropriately to changes in the work setting.

AR 95–96.  In the "narrative discussion" sections following each category of limitations, Dr. Walker stated that he based Ms. Klein's concentration and persistence limitations on the fact that she "[r]eports poor concentration and memory"; her social interaction limitations on the fact that she "[r]eports social avoidance and low stress tolerance"; and her adaptation limitation on the fact that she "[r]eports low stress tolerance."  *Id.*  In the "additional explanation" section of the MRFC, commonly referred to as Section III, Dr. Walker stated the following:

> The claimant can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, make decisions that require quick response.  The claimant can interact superficially with co-workers and supervisors and respond appropriately to changes in a work setting.

AR 97.

The ALJ assessed Dr. Walker's findings as follows:  "I find the opinions of the state agency psychological consultants (Exhibits 2A and 4A) somewhat persuasive.  I agree that the claimant has no more than moderate mental limitations."  AR 23.  Without explaining which parts of Dr. Walker's findings she found persuasive (and which she did not), the ALJ found Ms. Klein had the mental RFC

> to understand and remember detailed instructions; however, she is able to maintain attention and concentration to perform and persist at only simple tasks for two hours at a time without requiring redirection to task.  She can have occasional interaction with the general public.  She is able to interact with co-workers and supervisors on a superficial basis and incidental basis, but cannot perform tandem tasks or work as part of a close-knit team.  She requires work involving no more than occasional change in the routine work setting.

AR 21.

The ALJ committed legal error by failing to adequately explain how she considered Dr. Walker's findings.  Under the new regulations, an ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."  20 C.F.R. § 416.920c(b)(2).  The ALJ did not discuss the supportability or the consistency of Dr. Walker's prior administrative findings.  Ms. Klein complains that the ALJ's "two sentence 'analysis'" of Dr. Walker's findings does not explain which parts of Dr. Walker's findings she adopted, or which she rejected, leaving her "without any reviewable findings."  Doc. 25 at 16.  The Court agrees.

The ALJ's statement that she found Dr. Walker's opinion "somewhat persuasive" without any explanation is not legally sufficient.  If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton*, 79 F.3d at 1009; *see also Jensen*, 436 F.3d at 1165 ("The failure to apply

the correct legal standard or to provide this court with a sufficient basis to determine that

appropriate legal principles have been followed is grounds for reversal.").  The ALJ did not

adequately articulate her consideration of Dr. Walker's findings; therefore, remand is required.

The ALJ's failure to articulate her consideration of Dr. Walker's findings is a symptom

of the larger problem with the ALJ's decision:  the ALJ failed to adequately articulate how she

arrived at Ms. Klein's mental RFC.  "The RFC assessment must first identify the individual's

functional limitations or restrictions and assess his or her work-related abilities on a function-by-

function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545

and 416.945."  SSR 96-8p, 1996 WL 374184, at *1.  This means the ALJ must consider how the

claimant's impairments affect her physical abilities, mental abilities, and other abilities.  20

C.F.R. § 416.945(b)–(d).  An ALJ must consider all of the following when assessing a claimant's

mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your
> mental limitations and restrictions and then determine your residual functional
> capacity for work activity on a regular and continuing basis.  A limited ability to
> carry out certain mental activities, such as limitations in understanding,
> remembering, and carrying out instructions, and in responding appropriately to
> supervision, co-workers, and work pressures in a work setting, may reduce your
> ability to do past work and other work.

20 C.F.R. § 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental

activities generally required by competitive, remunerative work include the abilities to:

understand, carry out, and remember instructions; use judgment in making work-related

decisions; respond appropriately to supervision, co-workers and work situations; and deal with

changes in a routine work setting.").

In formulating the RFC, an ALJ must perform a function-by-function assessment of these

work-related functions, considering all of the relevant evidence in the case record.  SSR 96-8p,

1996 WL 374184, at *2.  The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'"  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at*7.

In this case, the ALJ adequately broke Ms. Klein's mental RFC into functional components and work-related mental activities.  *See* AR 21.  But the ALJ failed to "include a narrative discussion describing how the evidence supports each conclusion."  SSR 96-8p, 1996 WL 374184, at*7.  For example, the ALJ found that Ms. Klein's mental RFC allowed her to "have occasional interaction with the general public."  AR 21.  But the ALJ provided no discussion of her reasons or the evidentiary basis for including this limitation in Ms. Klein's RFC.  Likewise, the ALJ found that Ms. Klein was "able to interact with co-workers and supervisors on a superficial basis and incidental basis, but cannot perform tandem tasks or work as part of a close-knit team."  *Id*.  But again, the ALJ provided no discussion of her reasons or the evidentiary basis for including this limitation in Ms. Klein's RFC.  Finally, the ALJ concluded that Ms. Klein could do "work involving no more than occasional change in the routine work setting."  *Id*.  Again, the ALJ offered no explanation of her reasons or the

evidentiary basis for including this limitation in Ms. Klein's RFC.[8]  It is possible that some of

these limitations are at least partially based on limitations in Dr. Walker's findings.  But that is

neither clear nor certain from the ALJ's decision.[9]  In any case, "this court may not create or

adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the

ALJ's decision itself."  *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

---

[8] In analyzing Ms. Klein's symptoms, the ALJ concluded that Ms. Klein was able to "perform at least unskilled job tasks."  AR 22.  Unskilled work generally requires only the following:  (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting."  SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996).  Thus, a limitation to unskilled work does not encapsulate the limitations that the ALJ found in Ms. Klein's abilities to interact with the public, interact with co-workers and supervisors, or the limitation in her ability to deal with change.  The ALJ also concluded that Ms. Klein's "psychiatric impairments, alleged psychiatric symptoms, and subjective discomfort may limit her to unskilled jobs not requiring complex or detailed job tasks, but the claimant is fully capable of understanding, carrying out, and remembering simple instructions and tasks."  AR 23.  This also does not address the limitations the ALJ found in Ms. Klein's abilities to interact with the public, interact with co-workers and supervisors, or the limitation in her ability to deal with change.

[9] Ms. Klein guesses that the ALJ "appeared to adopt some moderate limitations from Dr. Walker's" findings.  Doc. 25 at 17.  The Commissioner guesses that the ALJ actually "included limitations beyond those found in Dr. Walker's" findings.  Doc. 27 at 19.  In support of this assertion, the Commissioner points out that

> While Dr. Walker found that Plaintiff could "make decisions that require quick responses" (Tr. 96), the ALJ limited Plaintiff to "work involving no more than occasional change in the routine work setting["] (Tr. 21).  And while Dr. Walker only limited Plaintiff to superficial interaction with coworkers and supervisors, the ALJ limited Plaintiff to supervisor and coworker interaction that was both superficial and incidental, and further precluded tandem tasks and working as part of a close-knit team (Tr. 21).  Finally, while Dr. Walker did not limit Plaintiff's interaction with the general public (Tr. 96), the ALJ limited such contact to "occasional" (Tr. 21).

Doc. 27 at 20.  This dispute highlights to lack of clarity in the ALJ's decision as to both how she considered the limitations in Dr. Walker's findings, and how she arrived at the mental limitations in Ms. Klein's RFC.  Like the litigants, the Court is left to guess at both of these parts of the decision.  As discussed above, this is legally insufficient.

The Commissioner argues that there is no error in the ALJ's assessment of Dr. Walker's findings because the ALJ's mental RFC is more limited than Dr. Walker's findings. Doc. 27 at 19–20. But in making this assertion, the Commissioner compares only Dr. Walker's Section III findings to the ALJ's RFC. *See id.* at 20. In her opening motion, however, Ms. Klein argued that the ALJ failed to account for two moderate limitations found in Section I of Dr. Walker's MRFCA: (1) a moderate limitation in the ability to perform at a consistent pace without a reasonable number and length of rest periods; and (2) a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. Doc. 25 at 17–18. In short, the parties disagree about which portions of Dr. Walker's findings the ALJ is required to discuss.

Neither party, however, meaningfully addresses the law underlying their dispute. Both this Court and the Tenth Circuit have grappled with the distinction(s) between Section I and Section III of the MRFCA, and have come to various conclusions about which MRFCA findings the ALJ is required to discuss in his or her RFC analysis. *Compare, e.g., Smith v. Colvin,* 821 F.3d 1264, 1269 n.2 (10th Cir. 2016) (stating in dicta that only Section III limitations matter); *Fannin v. Commissioner, SSA*, 857 F. App'x 445, 447 (10th Cir. 2021) (unpublished) (following dicta in *Smith* and stating that only Section III limitations matter*) with Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) (holding that ALJ may only rely on Section III if Section III captures all Section I limitations); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"); *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) (same); *Silva v. Colvin*, 203 F. Supp. 3d 1153 (D.N.M. 2016) (holding that an ALJ must account for both Section I and Section III limitations in RFC

15

analysis); *Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019) (holding that, under *Smith*, the ALJ need only account for the limitations found in Section III).  I previously have held that "[a]n ALJ is required to consider and discuss both Section I and Section III findings."  *Padilla v. Kijakazi*, No. 1:20-CV-00366-LF, 2021 WL 3030252, at *4 (D.N.M. July 19, 2021).  None of the cases cited above, however, have addressed how the significantly revised regulations pertaining to medical opinions and prior administrative medical findings apply to this issue.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Under these new regulations, MRFCAs are no longer considered "opinions," but instead are considered "prior administrative findings."  *See* 20 C.F.R. § 416.913(a)(5).  It is not clear how, if at all, this change will affect the thorny question of whether an ALJ must consider and discuss both Section I and Section III findings.  *But see Gutierrez v. Kijakazi*, No. CV 20-552 KK, 2021 WL 4710508, at *3 n.5 (D.N.M. Oct. 8, 2021) (finding that "it does not appear that the change in terminology has altered the ALJ's duty to consider and explain his consideration of these findings"); *Pitts v. Kijakazi*, No. CV 20-1205 CG, 2021 WL 5049441, at *6 (D.N.M. Nov. 1, 2021) (even under new rules, ALJ must discuss any Section I limitations not adequately encapsulated in Section III); *Thompson v. Kijakazi*, No. CV 20-1020 JFR, 2022 WL 19387, at *8 (D.N.M. Jan. 3, 2022) (under new rules, finding "Section III narrative assessments accounted for all of the moderate limitations they found in Section I").  Given the complexity of this issue, and the parties' failure to meaningfully address the issue in their briefing, the Court does not address it.

## VI.    Conclusion

The Court remands this case because the ALJ committed legal error by failing to explain how she "considered the supportability and consistency factors" in analyzing the limitations

found in Dr. Walker's MRFCA.  20 C.F.R. § 416.920c(b)(2).  In addition, the ALJ's cursory

claim that she found Dr. Walker's MRFCA "somewhat persuasive" failed to explain which parts

of the MRFCA she found persuasive and which she did not.  Finally, the ALJ failed to "include a

narrative discussion describing how the evidence supports each conclusion" in Ms. Klein's

mental RFC.  The Court remands so that the ALJ can remedy these legal errors.  The Court does

not reach Ms. Klein's other arguments, which "may be affected by the ALJ's treatment of this

case on remand."  *Watkins*, 350 F.3d at 1299.

      IT IS THEREFORE ORDERED that Ms. Klein's Motion to Reverse and Remand for

Rehearing (Doc. 25) is GRANTED.

      IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and

this case is REMANDED for further proceedings in accordance with this opinion.

                                                               _____

                                                    Laura Fashing

                                                    United States Magistrate Judge

                                                    Presiding by Consent